**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

KRISTY SMITH,

      Plaintiff,

v.

      Case No. 8:26-cv-509-KKM-TGW

INFUCARE RX
HEALTH, LLC,

      Defendant.

_____

## <u>ORDER</u>

Plaintiff Kristy Smith moves to remand this diversity action to state court, claiming that Defendant InfuCare Rx Health, LLC, failed to demonstrate that the amount in controversy requirement is met. *See* Mot. to Remand (MTR) (Doc. 27) at 1–2. Because InfuCare establishes by a preponderance of the evidence that the amount in controversy exceeds $75,000, I deny Smith's motion to remand.

## I.   BACKGROUND

In January 2026, Kristy Smith sued her former employer, InfuCare Rx Health, LLC, for retaliation under the Florida Private Sector Whistleblower Act (FWA). *See* Compl. (Doc. 1-4). Smith alleges that she raised concerns to her supervisors that InfuCare violated Florida law by hiring an unlicensed

handyman to perform non-permitted electrical work. *Id.* ¶¶ 10–12, 18–20. After objecting to InfuCare's unlawful practice, Smith claims that InfuCare terminated her from her position as a nursing director, in violation of the FWA. *Id.* ¶¶ 22–25, 37–40. The action seeks damages "exceeding $50,000," *id.* ¶ 7, namely "actual and compensatory damages, including, but not limited to, front pay, back pay, and emotional distress damages, as well as her costs and attorneys' fees, [and] declaratory and injunctive relief," *id.* at 7.

On February 23, 2026, InfuCare timely removed the action to federal court. *See* Notice of Removal (Doc. 1). According to InfuCare, the parties are diverse and the amount in controversy exceeds $75,000. *Id.* at 3–11. Specifically, InfuCare explains the FWA presumptively entitles a prevailing plaintiff to both back pay and front pay and allows a court to "award reasonable attorney's fees, court costs, and expenses to the prevailing party." *Id.* at 5–9 (citing § 448.104, Fla. Stat.). Likewise, Smith could potentially recover compensatory damages, which in comparable cases "may approximate $75,000 alone." *Id.* at 9 (collecting cases). Smith moves to remand the action to state court, *see* MTR, and InfuCare opposes, Resp. (Doc. 30).

## II.  LEGAL STANDARD

United States district courts have diversity jurisdiction if the parties are of diverse citizenship and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a). In removal cases, "the burden is on the party who sought

2

removal to demonstrate that federal jurisdiction exists." *Kirkland v. Midland Mortg. Co.*, 243 F.3d 1277, 1281 n.5 (11th Cir. 2001). The removing party must show, "by a preponderance of the evidence that the amount in controversy can more likely than not be satisfied." *See id.*; *see also* 28 U.S.C. § 1446(c)(2)(B). "[A] removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010). But conclusory allegations or speculation that the amount in controversy is satisfied are insufficient to meet the defendant's burden. *See Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1214–15 (11th Cir. 2007).

To evaluate the amount in controversy, a court may look to the documents that the defendant received from the plaintiff, along with the removal attachments. *See Pretka*, 608 F.3d at 755 (explaining that "Defendants may introduce their own affidavits, declarations, or other documentation" to show that the amount in controversy exceeds $75,000). A court may draw reasonable deductions and inferences from these documents using "judicial experience and common sense." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061–62 (11th Cir. 2010).

## III.   ANALYSIS

In support of remand, Smith argues that, at the time of removal, "her damages [were] approximately $64,000." MTR at 3. That figure includes

Smith's potential back pay through the date of removal and excludes what Smith deems overly "speculative" awards of front pay, attorney's fees, and compensatory damages. *See id.* at 6–9. InfuCare disagrees, urging this Court to consider damage amounts in all four categories. *See* Resp. at 5–8; *see also* Notice of Removal at 6 n.1, 10 n.3 (recognizing in-district split as to whether back pay and attorney's fees should be calculated as of removal or through trial). InfuCare argues that even considering only Smith's back pay award as of removal, the remaining damages categories suffice to bridge the gap to $75,000. *See* Resp. at 8.

At the outset, InfuCare correctly observes this Court's earlier decision in *Scott v. Walmart, Inc.*, 528 F. Supp. 3d 1267 (M.D. Fla. 2021), which considered similar damages issues under the Florida Civil Rights Act (FCRA). There, I "decline[d] to consider back pay that accrued or will accrue after the date of removal" because "the amount in controversy is determined *at the time of removal*," 528 F. Supp. 3d at 1275 (citing *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014)). Although InfuCare asks me to depart from *Scott*, its conclusion holds here under the FWA, and I consider only Smith's back pay accruing until removal.

Under the FWA, a successful plaintiff is presumptively entitled to back pay, which dates to the time of termination. *See* § 448.103(2)(d), Fla. Stat. (providing for "[c]ompensation for lost wages, benefits, and other

4

remuneration"). Smith's annual salary as a nursing director at InfuCare was $95,500. *See* (Doc. 1-2); *see also* Resp. at 6. She was terminated on July 19, 2025, and InfuCare removed this action on February 23, 2026. *See* Compl. ¶ 22; Notice of Removal. On that timeline, Smith concedes that if successful, the FWA would authorize "approximately $64,000" in back pay through the time of removal.[1] *See* MTR at 2. InfuCare agrees. Resp. at 6. And although Smith suggests that amount could decrease based on her efforts to mitigate damages, she provides no further details as to those efforts. *See* MTR at 2 n. 1.

Next, and unlike the FCRA, the FWA authorizes—and Smith demands—an award of front pay, which is the "money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001); *see* § 448.103(2)(a)–(e), Fla. Stat. (authorizing, among other things, "[r]einstatement of the employee"). In *Scott*, I concluded "that including an estimated award of front pay in this case is improper where the statutory authorization for such an award is absent in the first instance and its inclusion would necessarily rely on speculative estimates that are not in controversy at

---

[1] Smith's calculation appears inflated. The duration between Smith's termination date and the date of removal is 220 days, or 60% of the calendar year. Based on Smith's reported salary of $95,500, only $57,561.64 of back pay accrued between termination and removal. This roughly $6,500 delta does not alter the Court's conclusion that the amount in controversy is satisfied.

the time of removal." 528 F. Supp. 3d at 1276. While the FWA authorizes front pay and so does not implicate the initial concern, the latter difficulty persists in measuring relief, especially considering that a plaintiff must mitigate front pay damages. *See Aery v. Wallace Lincoln-Mercury, LLC*, 118 So.3d 904, 914–15 (Fla. 4th DCA 2013). Thus, at the time of removal, calculating Smith's potential front pay award "would require the Court to engage in 'unabashed guesswork.'" *Scott*, 528 F. Supp. 3d at 1276 (quoting *Lowery*, 483 F.3d at 1211). Because the latter damages and fees amounts suffice, I do not speculate as to Smith's front pay.

On the other hand, compensatory damages may be considered provided that InfuCare alleges sufficient "facts supporting that estimate or showing how [InfuCare] calculated that estimate." *Id.* at 1277; *see id.* (requiring that the removing party "point to any facts, testimony, or any of Plaintiff's allegations to demonstrate how it calculated what emotional distress damages are in controversy"). Here, InfuCare notes Smith's allegation that "she was terminated after complaining about alleged safety hazards on [InfuCare's] premises," which InfuCare argues "is precisely the type of retaliatory conduct that—if proven—has supported" emotional distress awards ranging from $30,000 (for demotion) to $165,000 (for termination) in similar FWA retaliation cases. *See* Resp. at 11–12 (collecting cases awarding compensatory damages for claims of emotional distress and mental anguish). I agree that a low five-

figure compensatory damages award of at least $11,000 is a reasonable estimate. *See id.* at 12 (arguing the award "would easily exceed the remaining $11,000 needed to satisfy the jurisdictional threshold"). Smith alleges that based on her retaliatory termination, she "has suffered, and continues to suffer, severe emotional distress, including but not limited to sleeplessness, crippling anxiety, loss of consortium, and family discord." Compl. ¶ 30. Given the similarity between Smith's allegations and the facts supporting jury verdicts greater than the delta between Smith's pre-removal back pay and the $75,000 threshold, remand is unwarranted.

Finally, Smith's potential to recover attorney's fees resolves remaining doubts against remand. Under the FWA, "[a] court may award reasonable attorney's fees, court costs, and expenses to the prevailing party." § 448.104, Fla. Stat. "When a statute authorizes the recovery of attorney's fees, a reasonable amount of those fees is included in the amount in controversy," *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1265 (11th Cir. 2000), but "[t]his amount must be measured as of the date of removal," *Upthagrove v. United Parcel Serv., Inc.*, No. 8:23-CV-0612-KKM-MRM, 2023 WL 3431823, at *2 (M.D. Fla. Apr. 17, 2023). The removing party must "allege that a particular amount of fees should be added or provide the Court with the information necessary to calculate attorney's fees." *Scott*, 528 F. Supp. 3d at 1278.

InfuCare does so here, submitting publicly filed records by one of Smith's three attorneys detailing that he "charges an hourly rate of $450.00." (Doc. 30-1) at 2. InfuCare further estimates that Smith's attorneys have performed at least 24.5 hours of work, including client intake and factual development, drafting the complaint, preparing service, reviewing early filings, communicating with defense counsel, reviewing the Notice of Removal, and drafting the motion to remand. *See* Resp. at 13–14. Although the latter category postdates removal and should be excluded, haircutting InfuCare's estimate by 25% still yields a figure just over $8,200. Adding this amount to a damages estimate of $11,000 and a backpay award of $64,000 (or even $57,561.64) produces a sum greater than the $75,000 jurisdictional threshold.

## IV.    CONCLUSION

InfuCare establishes by a preponderance of the evidence that the amount in controversy is met, considering Smith's damages of back pay, compensatory relief, and attorney's fees. Accordingly, the following is **ORDERED:**

1.    Smith's Motion to Remand (Doc. 27) is **DENIED.**

**ORDERED** in Tampa, Florida, on April 13, 2026.

Kathryn Kimball Mizelle
United States District Judge

8